UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THOMAS AND KATHERINE DANIELKIEWICZ, DON MARTIN, JOHN CURCIO, GEORGIA STAMATES, ARLENE POWERS, NANCY LEONTI, LINDA WATTS, and CLAUDIA GOODMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                  Plaintiffs,<br><br>    vs.<br><br>WHIRLPOOL CORPORATION,<br><br>                  Defendant. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Thomas and Katherine Danielkiewicz, Don Martin, John Curcio, Georgia Stamates, Arlene Powers, Nancy Leonti, Linda Watts, and Claudia Goodman, individually and on behalf of all others similarly situated, by and through their undersigned counsel (collectively, "Plaintiffs"), bring this class action complaint for damages and equitable relief against Defendant Whirlpool Corporation ("Defendant" or "Whirlpool"). Plaintiffs allege the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiffs, which are alleged upon personal knowledge:

## INTRODUCTION

1. Whirlpool designs, manufactures, advertises, and sells a line of gas and electric stoves, ranges, and ovens featuring its proprietary "AquaLift® Self-Cleaning Technology" ("AquaLift"), an attribute that Defendant purports to, *inter alia*, "self-clean" the interior of a dirty oven in less than one hour using only water and low heat.[1] Whirlpool's marketing and advertising for its ovens containing AquaLift (the "AquaLift Ovens" or "Ovens") is false, deceptive, and misleading to reasonable consumers because AquaLift – a key product feature – does not "self-clean" as advertised. Hundreds, if not thousands, of consumers nationwide have complained

---

[1]   A list of the known model numbers of Whirlpool appliances featuring the falsely advertised AquaLift feature is attached hereto as Exhibit 1.

publicly and to Whirlpool directly, and Whirlpool and its authorized sellers have admitted that AquaLift ***does not work***.

2.       Whirlpool describes AquaLift as "***oven cleaning redefined***," "***innovation nearly 50 years in the making***," and a "***first-of-its kind cleaning solution***."[2]  According to Whirlpool, AquaLift uses an "exclusive coating on the interior [that] activates with water and heat, allowing moisture to release soils from underneath so food and debris ***easily wipe away***."[3]  Whirlpool emphasizes that consumers "can use AquaLift™ self-clean technology frequently to clean ***tough baked-on soils***[,]"[4] and that the cleaning process takes only 40 to 50 minutes. Further, Whirlpool represents that after a "self-clean" cycle is complete, users of the Ovens can simply "remove residual water and ***loosened soils*** with a ***sponge or dry cloth***."[5]

3.       In Whirlpool's nationwide advertising and marketing campaign for AquaLift, Whirlpool does not set forth ***any*** limitations to the performance of the

---

[2]  Whirlpool Corporation AquaLift Technology, Frequently Asked Questions, http://whirlpoolcorp.com/aqualift/faq_q1.html (last visited Oct. 10, 2018), attached hereto as Exhibit 2.  Unless otherwise noted, emphasis is added throughout.

[3]  *Id.* at http://whirlpoolcorp.com/aqualift/faq_q2.html (last visited Oct. 10, 2018), attached hereto as Exhibit 3.

[4]  *Id.* at http://whirlpoolcorp.com/aqualift/faq_q7.html (last visited Oct. 10, 2018), attached hereto as Exhibit 4.

[5]  *Id.* at http://whirlpoolcorp.com/aqualift/faq_q3.html (last visited Oct. 10, 2018, attached hereto as Exhibit 5.

Ovens' "self-cleaning" technology and does not inform consumers that AquaLift only works on certain parts of the Ovens.

4.     Contrary to Whirlpool's representations in its advertising and marketing, AquaLift does not "self-clean" the Ovens or otherwise perform as advertised to consumers.  Indeed, the Internet is teeming with consumer complaints that describe the extent of Whirlpool's falsely advertised AquaLift technology.[6] Consumers complain, by way of example, that AquaLift "is *totally useless*" and "*doesn't work AT ALL*."  These putative class members have called AquaLift "*a waste of money*," "*worthless*," "*junk*," "*a joke*," "*the biggest ripoff*," and "*fraud plain and simple*," and these consumers have asked, "[H]ow can the company get away with advertising [a] self-cleaning oven when it absolutely *does not clean one bit?!*"[7]

5.     Whirlpool knew or should have known that its AquaLift feature cannot "self-clean" and does not function as advertised.  Indeed, in some instances, dissatisfied consumers, including Plaintiffs, have voiced their complaints directly to Whirlpool.  In response, Plaintiffs were largely advised by representatives of Whirlpool or its agents that if the AquaLift feature does not work, *consumers should purchase cleaning supplies to manually clean the oven.*  This advice contravenes

---

[6]     *See* infra ¶¶101-106.

[7]     *Id.*

Whirlpool's advertising of AquaLift's ability "to clean tough baked-on soils" and the ability for a consumer to "remove residual water and loosened soils with a sponge or dry cloth" after the AquaLift feature is activated.  This advice is also contrary to the "AquaLift Quick Reference Guide" which instructs consumers to avoid using "commercial oven cleaners" to manually clean the Ovens because it will damage the oven's interior.[8]

6.     Plaintiffs and the Class (defined below) did not receive any of the "self-cleaning" benefits of the AquaLift Ovens or observe the feature to work as advertised.   Instead, Plaintiffs have been forced to either endure futile and inconvenient service attempts and/or complain to Whirlpool about the "self-clean" feature that does not work as advertised.

7.     Plaintiffs and members of the putative Class have no choice but to manually clean virtually all surfaces of their ovens, due to AquaLift's inability to "self-clean" and work as advertised, or tolerate a perpetually dirty oven cavity. Whirlpool, in response to Plaintiffs' complaints, has sent "cleaning kits" and instructed some Plaintiffs to manually clean the oven.

---

[8]     AquaLift        Technology,        Oven        Cleaning        Quick        Reference        Guide, http://pdf.lowes.com/howtoguides/883049329918_how.pdf (last visited Oct. 16, 2018), attached hereto as Exhibit 6.

8.      At all times, AquaLift has failed to work and operate as advertised for Plaintiffs and the members of the putative Class resulting in damages including, but not limited to: (1) payment for a falsely advertised product; (2) overpayment for a product advertised to include a self-cleaning function, but did not; (3) a decrease in value of their Ovens due to the false advertising and (4) out-of-pocket money spent in connection with servicing AquaLift and/or manually cleaning the Oven.

9.      Plaintiffs assert claims on behalf of a Class for violations of the consumer protection statutes of Michigan, Florida, Missouri, New York, and California as well as claims for breach of contract, breach of express and implied warranties, and unjust enrichment.

10.     Plaintiffs also assert claims on behalf of a Michigan Subclass, Florida Subclass, Missouri Subclass, New York Subclass, and California Subclass (all defined below), for respective violations of the Michigan Consumer Protection Act, Mich. Comp. Law Ann. §445.901, *et seq*., ("MCPA"), the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §501.201, *et seq.* ("FDUTPA"), the Missouri Merchandising Practices Act §407.010, RSMo. ("MMPA"); the California Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* ("CLRA"), the California Unfair Competition Law, Bus. & Prof. Code §17200 *et seq.* ("UCL")*,* and the New York General Business Laws §§ 349-350 ("GBL"), as well as for breach of contract, breach of express and implied warranties, and unjust enrichment.

- 5 -

11.     As alleged herein, Plaintiffs and other reasonable consumers (the "Class members") purchased Ovens equipped with AquaLift, which were designed, manufactured, advertised, marketed, and sold by Whirlpool, its subsidiaries, and its authorized sellers. Plaintiffs and the Class purchased the Ovens after Whirlpool and its representatives and agents represented to them that AquaLift would "self-clean" their Ovens.

12.     Contrary to Whirlpool's advertising, marketing, and express and implied warranties, AquaLift does not and cannot "self-clean" the inside of an Oven. Therefore, Plaintiffs and the Class were damaged by Whirlpool's false, deceptive, and misleading advertising campaign.

13.     Plaintiffs and the Class members would not have purchased the Ovens had they known they would not self-clean as promised. Plaintiffs and the Class would not have purchased the Ovens – certainly not at the prices they paid – were it not for Whirlpool's false, deceptive, and misleading advertising and/or Whirlpool's failure to disclose to consumers the material fact that AquaLift "self-clean" is incapable of performing according to Whirlpool's advertising, marketing, and express and implied warranties.

## THE PARTIES

**Tom and Katherine Danielkiewicz**

14.    Plaintiffs Tom and Katherine Danielkiewicz ("Mr. and Mrs. Danielkiewicz") are citizens of Michigan and, at all relevant times, were residents of Brimley, Michigan.   On or around June 8, 2016, Mr. and Mrs. Danielkiewicz purchased a Whirlpool Electric Stove equipped with AquaLift from a Lowe's store in Petoskey, Michigan.

15.    Mr. and Mrs. Danielkiewicz purchased the Oven after viewing a sticker on the Oven marketing the AquaLift feature as a self-clean feature and after a Lowe's sales representative informed them that the AquaLift self-cleaning feature could self-clean as advertised directly on the Oven.

16.    Mr. and Mrs. Danielkiewicz first ran an AquaLift cycle approximately one week after purchase of the Oven.   They closely followed the user instructions. Mr. and Mrs. Danielkiewicz observed, however, that AquaLift did not remove the grease or stains in the Oven.   After the first attempt, following the clean method in the manual, Mr. and Mrs. Danielkiewicz struggled to clean the oven cavity two more times without success.

17.    After learning that the AquaLift feature did not self-clean, Mr. and Mrs. Danielkiewicz were forced to manually clean their Oven.

- 7 -

18.    In or around August 2017, Mr. Danielkiewicz called the Lowe's manager where the range was purchased to inquire getting a refund or exchange for another model.  Mr. Danielkiewicz read an article that a Sears store helped an AquaLift customer and exchanged (or refunded) his/her range.  However, the Lowe's manager refused a refund or exchange, but referred Mr. Danielkiewicz to Whirlpool Customer Service.

19.    In or around August 2017, Mr. Danielkiewicz contacted Whirlpool and spoke with a service representative.  Mr. Danielkiewicz voiced his displeasure with the non-functioning AquaLift feature and asked for a refund.  However, the Whirlpool service representative instead set up a service call with a local appliance repair.

20.    In or around August 2017, a local appliance repairman phoned and spoke with Mrs. Danielkiewicz.  The repairman asked Mrs. Danielkiewicz to talk him through the issue they were experiencing.  Mrs. Danielkiewicz described the step-by-step method that was followed to clean the oven using the AquaLift feature. The appliance repairman told Mrs. Danielkiewicz that it would be a waste of his time to come out to the house because he is aware of the issue with the AquaLift feature and that it does not work.

21.    Approximately one week after their initial call to Whirlpool, Mr. and Mrs. Danielkiewicz contacted Whirlpool again and spoke with another Whirlpool

- 8 -

customer service representative.   During this second call, the Whirlpool representative offered them a $75.00 gift card towards the purchase of another Whirlpool appliance.  Mr. and Mrs. Danielkiewicz rejected this offer.

22.    At all times, the AquaLift feature of Mr. and Mrs. Danielkiewicz's Oven has not performed as advertised and has not "self-cleaned" the Oven, thereby causing them damages.

23.    In December 2017, a tolling agreement was entered into between counsel for Plaintiffs and Whirlpool, which tolled the statute of limitations for Mr. and Mrs. Danielkiewicz's claims for damages and/or injunctive relief which relate to the allege misconduct of Whirlpool (*e.g.*, false advertising of AquaLift's efficacy).

**Don Martin**

24.    Plaintiff Don Martin ("Mr. Martin" or "Martin") is a citizen of Michigan and, at all relevant times, was a resident of Gladstone, Michigan.  In or around March 2, 2017, Mr. Martin purchased a Kitchen Aid Gas Stove equipped with AquaLift from Pioneer Appliance, a local appliance store in Escanaba, Michigan.

25.    Mr. Martin purchased the Oven after viewing the in-store advertising for AquaLift demonstrating how "easy" it is to self-clean with AquaLift.

26.    In or around June 2017, Mr. Martin activated the AquaLift feature for the first time.  He followed the user instructions.

- 9 -

27.     Mr. Martin recalls trying the AquaLift cycle three or four times.  It did not clean the Oven.

28.     Mr. Martin was forced to manually clean the Oven.

29.     Shortly after finding that the AquaLift feature did not self-clean, Mr. Martin contacted Whirlpool and spoke with a customer service representative who, Mr. Martin recalls, told Mr. Martin that he was expecting too much from AquaLift because the feature was incapable of performing (*self-cleaning*) like a traditional self-cleaning oven.

30.     At all times since his purchase of the oven, Mr. Martin's oven has not performed as advertised and has not "self-cleaned" his oven, thereby causing him damages.

**Georgia Stamates**

31.     Plaintiff Georgia Stamates ("Ms. Stamates" or "Stamates") is a citizen of California and, at all relevant times was, a resident of Redding, California.  In or around February 2016, Ms. Stamates purchased a Maytag Gas Stove equipped with AquaLift from Carmona's Appliance Center in Redding, California

32.     Ms. Stamates purchased the Oven based on in-store advertising, including, for example, statements by a sales representative at the retail store saying that the AquaLift self-cleaning actually "self-cleans" as well as a traditional oven without the use high heat to clean.

- 10 -

33.     When Ms. Stamates first attempted to use the AquaLift feature, she closely followed the user instructions.  Ms. Stamates observed that the running of the AquaLift cycle did not remove stains or cooking grease from the inside of the Oven.  Ms. Stamates recalls re-running the AquaLift feature, but that the Oven remained in virtually the same unclean condition it was before the "self-clean" feature was run.

34.     Ms. Stamates then contacted Maytag customer service to complain about AquaLift's inability to self-clean.  In response to her complaint, Whirlpool sent her a cleaning kit to use to manually clean her Oven.  Ms. Stamates later contacted Whirlpool customer service.  In response, Whirlpool sent her another cleaning kit.

35.     At all times, the AquaLift feature of Ms. Stamates' Oven has not performed as advertised and has not "self-cleaned" the Oven, thereby causing her damages.

**Arlene Powers**

36.     Plaintiff Arlene Powers ("Ms. Powers" or "Powers") is a citizen of California and, at all relevant times, was a resident of Aptos, California.

37.     On or around January 25, 2015, Ms. Powers purchased a KitchenAid Duel Fuel Range equipped with AquaLift, from a Sears store in Capitola, California.

- 11 -

At the same time, Ms. Powers purchased an extended three year warranty for the Oven from Sears.

38.    Ms. Powers purchased the Oven because, in part, AquaLift was advertised as containing a "self-clean" function but without the use or need for chemicals.  After the Oven was installed, Ms. Powers ran the AquaLift feature more than one time and observed that the AquaLift feature had virtually no effect in cleaning her Oven.

39.    As a result, Ms. Powers takes steps to avoid getting the Oven dirty, including cooking less often.  When the Oven gets dirty, Ms. Powers is forced to manually clean the interior of the Oven because AquaLift cannot do the job.

40.    On or about October 4, 2016, during a service call at her home, a Sears technician told Ms. Powers that her Oven's AquaLift self-cleaning feature was functioning properly and she was performing the "self-clean" cycle properly, even though it did not actually clean the interior of her Oven.

41.    Ms. Powers then called Sears to complain that the AquaLift self-cleaning feature of the Oven did not work.  Sears informed Ms. Powers that they were unwilling to replace the Oven.

42.    Pursuant to her extended warranty, a technician from AGO Home Appliance Repair Inc. arrived at Ms. Powers' home on or about January 5, 2017 to inspect and/or service the Oven.  The technician told Ms. Powers that the Oven's

"self-clean" feature was working properly, even though it did not actually clean the interior of her Oven.

43.     In or about January 2017, Ms. Powers called KitchenAid customer service to complain that the AquaLift self-cleaning feature of the Oven did not work. In response, Ms. Powers was sent a cleaning kit to use to manually clean her Oven.

44.     At all times, the AquaLift feature of Ms. Powers' Oven has not performed as advertised and has not "self-cleaned" the Oven, thereby causing her damages.

45.     In December 2017, a tolling agreement was entered into between counsel for Plaintiffs and Whirlpool, which tolled the statute of limitations for Ms. Powers' claims for damages and/or injunctive relief which relate to the allege misconduct of Whirlpool (*e.g.*, false advertising of AquaLift's efficacy).

**Nancy Leonti**

46.     Plaintiff Nancy Leonti ("Ms. Leonti" or "Leonti") is a citizen of California and, at all relevant times, was a resident of Placerville, California.

47.     On or around March 2015, Ms. Leonti purchased a Maytag Electric Range, equipped with the AquaLift feature from a Sears store in Sacramento, California.

48.     Ms. Leonti ran the AquaLift feature, following the instructions. The AquaLift self-clean feature did not clean Ms. Leonti's Oven. As a result, Ms. Leonti

has been forced to spend substantial time cleaning the Oven.  Ms. Leonti has tried various sponges and mild cleaners to clean the Oven without any success.

49.    At all times, the AquaLift feature of Ms. Leonti's Oven has not performed as advertised and has not "self-cleaned" the Oven, thereby causing her damages.

50.    In December 2017, a tolling agreement was entered into between counsel for Plaintiffs and Whirlpool, which tolled the statute of limitations for Ms. Leonti's claims for damages and/or injunctive relief which relate to the allege misconduct of Whirlpool (*e.g.*, false advertising of AquaLift's efficacy).

**Linda Watts**

51.    Plaintiff Linda Watts ("Ms. Watts" or "Watts") is a citizen of Missouri, and, at all relevant times, was a resident of Webb City, Missouri.

52.    In or around November 2017, Ms. Watts and her spouse purchased a Whirlpool Electric Range equipped with the AquaLift feature from a Lowe's store in Joplin, Missouri.

53.    Ms. Watts was in the market for an Oven containing a self-cleaning feature and purchased the Oven after viewing the in-store advertising for AquaLift self-clean.

54.    Ms. Watts first ran the AquaLift feature approximately four months after purchase.  She activated the AquaLift feature and closely followed the user

instructions.  At the end of the "self-cleaning" cycle, Ms. Watts' Oven remained soiled with stains and food, requiring her to manually scrub her Oven to attempt to get it clean.  Ms. Watts activated the AquaLift feature multiple times.  Each time, the AquaLift failed to "self-clean" as advertised and, each time, the Oven had to be manually scrubbed to remove stains from the interior.

55.    In or about spring 2018, Ms. Watts emailed Whirlpool to complain about AquaLift's inability to "self-clean" her Oven.  Whirlpool has not responded to that inquiry.

56.    At all times, the AquaLift feature of Ms. Watts' Oven has not performed as advertised and has not "self-cleaned" the Oven, thereby causing her damages.

**Claudia Goodman**

57.    Plaintiff Claudia Goodman ("Ms. Goodman" or "Goodman") is a citizen of Florida and, at all relevant times was, a resident of Madison, Florida.  In or around December 2016, Ms. Goodman purchased a Whirlpool Electric Stove, equipped with AquaLift from a Lowe's store in Florida.

58.    Ms. Goodman was in the market for a "self-clean oven" to replace her Oven, which contained a traditional self-cleaning feature, and purchased an Oven containing the AquaLift feature because it was a "self-cleaning" Oven.

59.     Within approximately three months of purchase, Ms. Watts activated the AquaLift feature and closely followed the user instructions.  At the end of the "self-cleaning" cycle, Ms. Goodman observed that the AquaLift feature did not clean the interior of the Oven.  She was forced to manually (*e.g.*, get down on her hands and knees) scrub the interior of the Oven cavity.  Shortly after, Ms. Goodman ran another cycle of the AquaLift feature.  Again, AquaLift failed to clean the Oven interior.

60.     At all times, the AquaLift feature of Ms. Goodman's Oven has not performed as advertised and has not "self-cleaned" her Oven, thereby causing her damages.

**John Curcio**

61.     Plaintiff John Curcio ("Mr. Curcio" or "Curcio") is a citizen of New York and, at all relevant times, was a resident of Tappan, New York.  In or around April 2013, Mr. Curcio purchased a Maytag Free Standing Gas Range equipped with AquaLift from a Home Depot store in Nanuet, New York.

62.     Within approximately three months of purchase, Mr. Curcio ran the AquaLift self-cleaning cycle, closely following the user instructions.  At the end of the "self-cleaning" cycle, he observed that AquaLift had virtually no self-cleaning effect as stains and grime remained in the Oven interior.

- 16 -

63.    Mr. Curcio ran the AquaLift cycle several times, each time closely following the user instructions.  AquaLift failed to remove the grime from the interior of Mr. Curcio's Oven.  It did not self-clean.  As a result, Mr. Curcio was forced to manually clean the Oven.

64.    In or around July 2013, Mr. Curcio complained to Whirlpool about the inefficacy of the AquaLift feature to self-clean.  In response, he was sent a sponge and cleaning kit from Whirlpool to use to manually clean his Oven.

65.    Mr. Curcio tried using AquaLift with the cleaning kit he received from Whirlpool.  It did not effectively clean the Oven.

66.    Shortly after, Mr. Curcio called, again, to complain to Whirlpool.  The Whirlpool representative told Mr. Curcio that there was nothing more the company could do.

67.    At all times, the AquaLift feature of Mr. Curcio's Oven has not performed as advertised and has not "self-cleaned" her Oven, thereby causing him damages.

68.    In December 2017, a tolling agreement was entered into between counsel for Plaintiffs and Whirlpool, which tolled the statute of limitations for Mr. Curcio's claims for damages and/or injunctive relief which relate to the alleged misconduct of Whirlpool (*e.g.*, false advertising of AquaLift's efficacy).

- 17 -

**Whirlpool Corporation**

69.    Defendant Whirlpool is a Delaware corporation headquartered in Benton Harbor, Michigan.   Whirlpool describes itself as the world's leading manufacturer and marketer of household appliances.   Ovens equipped with the AquaLift feature are sold and distributed under the Whirlpool brand name and its wholly-owned subsidiaries including Maytag Corporation ("Maytag"), KitchenAid, Inc. ("KitchenAid"), and the Jenn-Air Products Company ("Jenn-Air") (collectively, the "Ovens").   At all relevant times, Whirlpool designed, manufactured, distributed, advertised, marketed, promoted, and sold the Ovens equipped with the falsely advertised AquaLift feature.

## JURISDICTION AND VENUE

70.    This Court has jurisdiction pursuant to 28 U.S.C. §1332, as amended by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than Whirlpool, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

71.    Venue is proper in this District pursuant to 28 U.S.C. §1391 because many of the acts and transactions giving rise to this action occurred in this District and because: (a) Whirlpool is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District through the

promotion, marketing, distribution, and sale of its appliances with AquaLift; (b) Whirlpool conducts substantial business in this District; and (c) Whirlpool is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

### Whirlpool Extensively Advertises AquaLift's
### Purported Ability to "Self-Clean" the Interior of Its Ovens

72.     Whirlpool describes itself as the world's leading manufacturer and marketer of household appliances.  Whirlpool sells household appliances, such as kitchen ovens, under various brand names, including, Whirlpool, Maytag, KitchenAid, and Jenn-Air.

73.     Whirlpool designed, manufactured, advertised, and sold throughout the United States at least 87 models of kitchen Ovens featuring AquaLift "self-cleaning" technology.  AquaLift is available on gas or electric Ovens of different sizes.

74.     Whirlpool advertises its AquaLift technology as a key feature to distinguish the Ovens from competitors.  Indeed, through its website, in-store point-of-sale displays, and product information labels on the appliances themselves, Whirlpool touts AquaLift as "*oven cleaning redefined*," "*innovation nearly 50 years in the making*," and a "*first-of-its kind cleaning solution* that is activated with heat and water to release *tough baked-on soils* from the oven interior in less than 1 hour."

75.     Whirlpool even dedicates an independent page of its website solely to showcase its AquaLift technology.[9]  On that page, under a large bold heading that reads, "***Cleaning your oven just got faster, cooler, and easier***," Whirlpool shares a video demonstration of the purported superiority of its AquaLift self-clean technology over traditional self-cleaning ovens:



76.     A voiceover in the video states that, "it's time for something new.  Time for AquaLift technology":

---

[9]     Whirlpool Corporation AquaLift Technology, "Cleaning your oven just got faster, cooler, and easier," http://whirlpoolcorp.com/aqualift/index.html (last visited October 10, 2018), attached hereto as Exhibit 7.



77.    "The baked on stains may be the same, but now you can have your oven

back in less than one hour.  All with less heat and no odor.":



78.    "AquaLift technology, ***an innovation*** from Whirlpool Corporation.

***Redefines oven cleaning***.":



79.     "Simply remove the oven racks . . .":



80.     ". . . and wipe out the excess soil.":



81.    "Pour two cups of water in the bottom of the oven, and *let AquaLift*
*technology do the work*.":



82.    "This *innovative coating* is activated by water and heat.":



83.    "It lifts tough baked-on soils from underneath, making oven cleaning a snap.":



84.    "In under an hour, the oven is ready for a final wipe down to remove the soil.":



85.    "All done in less time, with no odor, and no extreme heat like traditional, high-temperature self-clean ovens.   AquaLift technology is ***oven cleaning redefined***.":



86.    On the AquaLift "frequently asked questions" ("FAQ") page, Whirlpool describes AquaLift as "a ***first-of-its kind cleaning solution*** that is

activated with heat and water to release ***tough baked-on soils*** from the oven interior in less than 1 hour."[10]

87.   Whirlpool's FAQs page represents that AquaLift works through an "exclusive coating on the interior [that] activates with water and heat, ***allowing moisture to release soils from underneath so food and debris easily wipe away***."[11]

88.   Whirlpool also offers consumers an AquaLift "Quick Reference Guide" which describes AquaLift as an *"**innovative cleaning solution**"* that "utilizes heat and water to release baked-on spills from the oven interior in less than 1 hour."[12]

89.   The "Quick Reference Guide" sets forth five steps to make the AquaLift perform as advertised stressing that consumers should not attempt to manually clean the Oven with "commercial" cleaners or any other cleansers, that the "residual water and loosened soils" can be removed by a sponge or dry cloth ***immediately after the cycle is complete***, that the "cleaning action loosens baked-on residue ***from the oven bottom***" and that consumers must "clean the oven door and wall" themselves "to ***avoid baked-on soil.***"[13]

---

[10]   *See* Exhibit 2.

[11]   *See* Exhibit 3.

[12]   *See* Exhibit 6.

[13]   *Id*.

90.     The "Quick Reference Guide" also has a "Helpful Tips" section.  This section states in pertinent part that "[*h*]*eavily soiled ovens may require a second cleaning cycle*."[14]  While this language implies that the AquaLift, if at least used multiple times, will remove heavy soil from all parts of the Oven cavity, Whirlpool fails to mention that the AquaLift cannot clean the Oven walls and the Oven door.

 **Oven Cleaning Quick Reference Guide**

AquaLift™ Technology is an innovative cleaning solution that is activated with heat and water to release baked-on spills from the oven interior in less than 1 hour. This new cleaning technology is a low-heat, odor-free alternative to traditional self-cleaning options.

**STEP**  **1**
**REMOVE** all racks and accessories from the oven cavity and wipe excess soil.

Use the scraper to remove additional easily-removed soils.

**STEP**  **2**
**POUR** 2 cups (16 oz) of distilled or filtered water onto the bottom of the empty oven and close the oven door.

**IMPORTANT:** Do not use cleansers, chemicals or other additives with the water.

**STEP**  **3**
**PRESS** CLEAN then press START.

Cleaning action loosens baked-on residue from the oven bottom.

Allow 40 minutes for cleaning and cool down. Some condensation will form on the window. When the cleaning cycle is complete, a beep will sound. Press CANCEL to end.

**STEP**  **4**
**REMOVE** the residual water and loosened soils with a sponge or soft dry cloth immediately after the cycle is complete.

Remove remaining soils with a non-scratch scrubbing sponge or plastic scraper.

Additional cleaning cycles may be run to help remove stubborn soils.

**STEP**  **5**
**CLEAN** the oven door and walls to avoid baked-on soil. Refer to the User Instructions for additional information.

**IMPORTANT:** The use of chemicals, including abrasives and commercial oven cleaners, or metal scouring pads may damage the oven interior.

    

**Use regularly to clean oven spills**
For additional information, refer to the User Instructions.
For assistance with AquaLift™ Technology, call **1-877-258-0808**, or visit our website at http://whr.pl/aqualift.

W10400064A

W10400064A
©2011. All rights reserved.          AQUALIFT and AQUALIFT Design are trademarks of Whirlpool, U.S.A.          7/11          Printed in U.S.A.

**Helpful Tips**

**Cleaning Your Ceramic Glass Cooktop**
Clean your cooktop after each use with ceramic glass cooktop cleaner and apply with approved cooktop cleaning pads. Scrape off sugary spills while the cooktop is still warm. You may want to wear oven mitts while cleaning the cooktop.

Remove stubborn stains with Cooktop Cleaner, Scraper and Cleaning Pads available in the Cooktop Care Kit (not included).

Do not allow spills and stains to remain on the cooktop over night. Do not clean with steel wool, abrasive powder cleaners, chlorine bleach, rust remover, or ammonia as they will damage the glass. Razor scraper edges will not scratch the glass when used properly at a 45 degree angle to the surface.

**Cooktop Glass**
The surface cooking area will glow red when an element is on. It may cycle on and off to maintain the selected heat level. Portions of the element may cycle on and off at different times on some elements. This is normal.

The Warm Zone element area will not glow red when cycling on.

**Oven Odor**
There may be some odors the first few times you use your range. This will go away after the oven is used a few times. To eliminate these odors, it is recommended that you run the Bake cycle at 400°F (204°C) for 30 minutes prior to cooking for the first time.

**Oven Preheat Time**
The standard time necessary to preheat your oven to 350° (177°C) is 10 to 15 minutes. Factors that have an impact on preheat times are: room temperature, starting oven temperature, and the number of oven racks. Unused oven racks can be removed prior to preheating your oven to reduce the preheat time.

**Convection**
During convection cooking, the bake, broil and convection elements cycle on and off in intervals to maintain the oven temperature, while the fan circulates the hot air.

If the oven door is opened during convection cooking, the fan will turn off immediately. It will come back on when the oven door is closed.

**AquaLift™ Technology Cleaning**
Some condensation will form on the oven window during the cleaning cycle. This condensation will evaporate within 30 minutes.

During the AquaLift™ Technology cleaning cycle, some steam will come out of the bottom of the console. This is normal and part of the cleaning cycle.

Make sure that the oven is level to ensure water is evenly distributed on the bottom of the oven cavity. Adjust the leveling feet as instructed in the Installation Instructions.

Remove heavy spills before starting the cleaning cycle. Heavily soiled ovens may require a second cleaning cycle.

For assistance with AquaLift™ Technology, call 1-877-258-0808, or visit our website at http://whr.pl/aqualift.

For additional information, refer to the User Instructions.

91.     Whirlpool also represents the ease of use of AquaLift and that operation of the AquaLift feature "takes just a few steps."

92.     For example, its website states that:

- "[a]fter removing all racks and accessories from the oven cavity and wiping excess soil up, simply:

- Pour . . . water onto the bottom of an empty AquaLift™ self-clean technology enabled oven and close the door.

- Press "Clean" then "Start" to begin the 40 minute cycle. . . .  When the cycle is complete, a beep will sound.  Press "Cancel" to end.

- Immediately after the cycle is complete, remove residual water and loosened soils with a sponge or dry cloth.[15]

93.     Whirlpool further represents that AquaLift was "developed to directly address *consumer dissatisfaction with traditional high-temperature self-clean ovens* and to provide them an alternative cleaning solution."[16]

94.     According to Whirlpool, the "key benefits of using AquaLift™ self-clean technology" include that it "SAVES TIME: The cleaning process takes under one hour compared to the average 3-6 hours of traditional self-cleaning ovens" and

---

[15]  *See* Exhibit 5.

[16]  Whirlpool Corporation AquaLift Technology, Frequently Asked Questions, http://whirlpoolcorp.com/aqualift/faq_q5.html (last visited October 10, 2018), attached hereto as Exhibit 8.

"NO ODOR: Since AquaLift™ self-clean technology uses water to clean it avoids the traditional chemical odors associated with traditional oven cleaning."[17]

95.    Whirlpool further represents that AquaLift can be used "frequently to clean **tough baked-on soils**."[18]

96.    A "Glossary" section of the Whirlpool website contains the following entry for AquaLift: "AquaLift® Self-Clean Technology.  Get your oven clean in less than an hour with odor-free, low temperature AquaLift® technology.  This **exclusive coating** on the interior activates with water and heat, **allowing moisture to detach soils from underneath** so food and debris **easily wipe away**."[19]

97.    Whirlpool also advertises the AquaLift feature on individual product webpages.  For example, the webpage for Whirlpool's 6.4 Cu. Ft. Freestanding Electric Range model number, WFE540H0ES, with AquaLift® Self-Cleaning Technology, states that: "[a]t the end of the meal, this large oven's easy wipe ceramic

---

[17]    *Id.* at http://whirlpoolcorp.com/aqualift/faq_q6.html (last visited October 10, 2018), attached hereto as Exhibit 9.

[18]    *See* Exhibit 4.

[19]    Whirlpool   Corporation   AquaLift   Technology,   Frequently   Asked   Questions, http://www.whirlpool.com/glossary/#A (last visited October 10, 2018), attached hereto as Exhibit 10.

glass cooktop offers hassle-free cleanup, while AquaLift® self-cleaning technology delivers ***odor-free oven cleaning without chemicals in only 50 minutes***."[20]

98.    Similarly, the webpage for Whirlpool's 5.8 cu. ft. Front-Control Gas Stove with Fan Convection, model number WEG730H0DB states that: "[w]hen it's time for cleanup, AquaLift™ self-cleaning technology helps you ***wipe away messes*** in your slide-in gas stove without harsh chemicals or odors.[21]

99.    The webpages for Whirlpool's various other models of the Ovens include similar misrepresentations regarding AquaLift's purported ability to "self-clean[]" ovens in less than one hour.[22]

100.    Whirlpool echoes these misrepresentations directly on the product label of each Whirlpool oven equipped with AquaLift.

### Whirlpool's Nationwide Advertising Campaign for AquaLift Is False Deceptive and Misleading to Reasonable Consumers

101.    Whirlpool's entire advertising campaign for AquaLift – a key product feature – is false, deceptive, and misleading to reasonable consumers because,

---

[20]   http://www.whirlpool.com/kitchen-1/cooking-2/ranges-3/-[WFE540H0ES]-1022746/WFE540H0ES/ (last visited Oct. 10, 2018), attached hereto as Exhibit 11.

[21]   http://www.whirlpool.com/-[WEG730H0DS]-1022391/WEG730H0DS/ (last visited Oct. 10, 2018), attached hereto as Exhibit 12.

[22]   *See, e.g.*, http://www.whirlpool.com/-[WEE730H0DS]-1022332/WEE730 H0DS/ (last visited October 10, 2018); http://www.whirlpool.com/-[WEC530H0DS]-1022331/WEC530H0DS/ (last visited October 10, 2018); http://www.whirlpool.com/-[WFE745H0FS]-5764098/ WFE745H0FS/ (last visited Oct. 10, 2018); http://www.whirlpool.com/-[WFG715H0EH]-1022749/WFG715H0EH/ (last visited Oct. 10, 2018), attached hereto as Exhibit 13.

contrary to Whirlpool's representations, AquaLift does not "self-clean" the interior of the Ovens and, instead, requires consumers to manually clean their Ovens with cleaning products – ***defeating the purpose of a "self-cleaning" oven***.

102.   To be sure, the Internet is teeming with consumer complaints regarding AquaLift's inability to "self-clean."   For example, on February 8, 2013, one consumer posted the following complaint on Consumerist.com:

> I have a 30 day old Kitchen Aid convection gas range.  Love how it cooks.  HOWEVER, their ***"Aqualift" cleaning technology is a rip AND entirely misleading***. . . .  So… every time you want to clean your cool new oven, ***you'll be scrubbing it yourself!!!***[23]

103.   This dissatisfied consumer also posted the following photograph of the final results of Whirlpool's AquaLift "self-clean" technology:



---

[23]   https://consumerist.com/2013/02/08/my-advanced-new-self-cleaning-oven-needs-a-lot-of-help-to-clean-itself/ (last visited Oct. 10, 2018), attached hereto as Exhibit 14.

104.   In November 2015, another dissatisfied consumer posted a photograph of an Oven that had "self-cleaned" with AquaLift:[24]



105.   Countless other complaints from putative Class members can be found on the Internet.  Online references and complaints regarding the Ovens mirror plaintiffs' experience, including the following sampling:

| Source | Comments |
| --- | --- |
| Consumer Affairs 4/18/16<br><br>https://www.consumeraffairs.com/homeowners/whirlpool_ranges.html[25] | Purchased the oven in summer 2015.  Very disappointed in the AquaLift Self-Cleaning oven.   Absolutely useless**.  *Does absolutely nothing and I end up cleaning the oven by hand*.**  As a senior citizen, this is uncomfortable; I have injured my leg in the process and now feel I must wipe the oven down after each use.  I was so looking forward to having a nice clean |

---

[24]   https://www.consumeraffairs.com/homeowners/kit_stoves.html   (last   visited   October   10, 2018), attached hereto as Exhibit 15.

[25]   Attached hereto as Exhibit 16.

- 32 -

| Source | Comments |
|---|---|
| | oven at all times and it's not happening. This is of no value to me. |
| Consumer Affairs 4/7/16 https://www.consumeraffairs.com/homeowners/whirlpool_ranges.html[26] | I HATE, HATE, HATE the aqua lift clean feature. It's awful. The bottom came somewhat clean but cook bacon and the sides and top are filthy and the aqua lift can't clean that. I don't know how this ever made it past the thought process stage to become a "thing" but it needs to go away. I'm quite cranky right now as ***I've just spent two hours scrubbing my oven while reaching past the oven door that doesn't come off because it's a "self-clean oven."*** This is what I have to look forward to for the next 10 years until it dies and I can get a new oven? What a joke!! |
| Consumer Affairs 4/1/16 https://www.consumeraffairs.com/homeowners/whirlpool_ranges.html[27] | We bought a new stove from Lowe's in 2015 which is a Whirlpool with an AquaLift self-cleaning function. ***This function is totally useless***. We have tried it several times and it does not remove the grime from the oven. We did not even have a very dirty oven. It doesn't clean the sides at all and the bottom is still dirty. I complained to the store and they told me the AquaLift function should be used every time the oven has been used. They recommend that I use a spray for the oven (which is porcelain) and scrub off the dirt. Give me back my old self-cleaning oven with the high heat. This new technology doesn't work. |
| Consumer Affairs 3/4/16 https://www.consumeraffairs.com/homeowners/whirlpool_ranges.html?page=2[28] | Whirlpool Gold Series gas oven with Aqua Lift. Very unhappy with this oven. Cons: ***Aqua Lift technology doesn't work AT ALL*** (manual cleaning required); stove top hard to clean; 2 front gas burners are "super" burners which is fine for boiling water, but too hot for regular cooking. Would be better to have one super burner in the middle or back but two upfront is way too hot for regular cooking, even on lowest setting. Was going to use spray cleaner but cannot on convection ovens. In a bind what to do except scrub with Brillo. Anyone used Brillo? |
| Consumer Affairs 2/23/16 https://www.consumeraffairs.com/homeowners/whirlpo | Whirlpool gas range Model#wfg10h0ah1 with aqua lift technology. This is the biggest ripoff that was ever done to me. It say self clean, not it cleans and then you clean. ***This is fraud plain and simple***. I am handicapped and made it very clear to the salesperson that it had to be self cleaning. 4 times I did the clean cycle and I was in shock, I called repair, I thought the self clean was broken. However this is the line |

---

[26]   Attached hereto as Exhibit 17.

[27]   Attached hereto as Exhibit 18.

[28]   Attached hereto as Exhibit 19.

| Source | Comments |
| --- | --- |
| ol_ranges.html?page=2[29] | they give you over and over, that it's not broken.  "This is working the way it was designed to work."  So they made a range that is self cleaning, but no it doesn't do that.  For 899.99, I did not deserve to get duped like this. |
| Consumer Affairs<br>9/24/15<br>https://www.consumeraffairs.com/homeowners/kit_stoves.html?page=2[30] | Like so many other reviewers I am totally dissatisfied with my KitchenAid Gas Range Model KGRS202BSS.  I second the reviews by Gary of Tonawanda, NY on May 20, 2015 (and others) that the AquaLift Self Clean is not effective and that the black stove top stains, but primarily I totally agree with his comment about how the heat vents out and heats up the handles.  This was also the comment of Sharyn of Pearl River, NY on July 2, 2015 (who I would like to thank for the tip about requesting the black knobs which I intend to do).<br><br>***This range is TERRIBLE.  It becomes a literal sauna in my kitchen*** when I try to cook using the stove top and/or the oven.  Everyone who comes to my home comments on it.  And this is despite the fact that I have a fan above the oven which is vented to the outside.  I take care of my 2 year old grandson, and I live in fear of him burning himself since the knobs are obviously within his reach.  He has definitely learned about the concept of HOT.  ***I purchased this range from PC Richards, and they have sent 3 different servicemen out, only to tell me that's the way it is!***  Unbelievable.  I just visited my friend who has a kitchen much smaller than mine, and her new Maytag slide in gas range did not produce the sauna effect that my KitchenAid range does.  DON'T BUY KITCHENAID. YOU'LL REGRET IT. |
| Consumerist<br>9/28/14<br>https://consumerist.com/2013/02/08/my-advanced-new-self-cleaning-oven-needs-a-lot-of-help-to-clean-itself/[31] | Whirlpool's Aqualift self-cleaning system seemed to be a technological advance comparable to see-through dishwashers, but she reports that her oven only cleans the bottom center, and not the sides or the corners.  You know, the parts that you want your self-cleaning oven to take care of for you. |
| Houzz (GardenWeb)<br>9/19/2012 | ***Get ready for rubber gloves and oven cleaner.  It does not work.***  Consumer reports says it doesn't work, but I bought before reading reviews.  I want to get rid of mine.  They are sending me a special oven cleaner for this piece of junk so |

---

[29]   Attached hereto as Exhibit 20.

[30]   Attached hereto as Exhibit 21.

[31]   Attached hereto as Exhibit 22.

| Source | Comments |
|---|---|
| http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[32] | what good is this self cleaning oven that needs a special oven cleaner?  I will never again buy American. |
| Houzz (GardenWeb)<br><br>1/29/13<br><br>http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[33] | I bought A Whirlpool range convection, self cleaning and I'm very furious too because the self cleaning, after several time of cleaning, which the last one *I let it go for 4 hours, it didn't clean anything at all*.  My old GE of 30 years used to come out spotless.  It has been over a year already, twice the technician came out and there was nothing he could do.  We bought 5 years extended warranty and Sears told us there is nothing they can do.   I still have to try calling the manufacturer, hoping they'll give me some satisfaction.  It really sucks.   We should be more further ahead with technology.  Now I don't know who to trust anymore. |
| Houzz (GardenWeb)<br><br>2/11/2013<br><br>http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[34] | I, too, unfortunately purchased this awful oven.   *It is uncleanable!*  I bake frequently, and any form of grease splatter is not removable from the sides and back.  Wrote to the company and all they did was tell me to follow the instructions that came with the range!  Do they think I'm stupid?  I am very angry.  Any advice that can be passed along regarding how I can clean it, or how to make the company responsible for this lousy oven, would be greatly appreciated. |
| Houzz (GardenWeb)<br><br>2/13/2013<br><br>http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[35] | I was also dumb enough to buy this range.  I've had it one year.  Have written complaints to Maytag and Whirlpool.  I received phone calls from some underpaid know nothing who treated me as if I'd never cleaned an oven before.<br><br>*For Whirlpool/Maytag to call this "self-cleaning" is false advertising and they need to make it right with me or I will not purchase another product from them ever again!* |

---

[32]   Attached hereto as Exhibit 23.

[33]   Attached hereto as Exhibit 24.

[34]   Attached hereto as Exhibit 25.

[35]   Attached hereto as Exhibit 26.

| Source | Comments |
|---|---|
| Houzz (GardenWeb) 1/18/2014 http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[36] | I have this horrible range and it is a piece of garbage.  It might as well not even have a self cleaning feature.  It does not work.  Cleaning the glass top of the stove is also very difficult.  ***It was a total waste of money, Maytag doesn't care and won't do anything about it.***  DO NOT PURCHASE ONE.  There is also little to no storage space in the drawer.  There is not one good thing I can say about this stove.  Not one. |
| Houzz (GardenWeb) 5/11/2015 http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[37] | I bought this range WYMER888BW the 25th Jan. 2014.  ***What a waste of money, self clean not at all.  Would never buy a Maytag or Whirlpool product again.  Takes a lot of hard scrubbing & scraping not to mention time to do repeated steam clean cycles and trying to clean this trash***.  Biggest mistake in a purchase we have made in our 50 years of marriage.  Would not recommend!!! |
| Houzz (GardenWeb) 9/13/2015 http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[38] | Does not work at all!  My wife and I bought it 2 years ago from Lowes (on sale).  We have tried the self cleaning feature multiple times, even have run it twice (simultaneously) to see if double the cleaning time would help.  Each time, we end up using gloves and other cleaning products to scrape out the mess.  I don't know how Maytag tested this before it was marketed, but it does not clean anything. |
| Houzz (GardenWeb) 9/14/2015 http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on- | i gave up fighting with maytag/whirlpool..after a year of owning the same oven, it was junk.  I sold it for 500$, (loss 200$)and bought a regular GE stove which has the old fashion kind of self cleaning oven cleaning feature...and i LOVE it.  Never will i purchase a whirlpool or Maytag product again.  They are throw away appliances in more ways than one.  Good luck on your junk.  Sell it , take the loss and get rid of your headache. |

---

[36]   Attached hereto as Exhibit 27.

[37]   Attached hereto as Exhibit 28.

[38]   Attached hereto as Exhibit 29.

| Source | Comments |
|---|---|
| maytag-ranges-oven-cleaning)[39] | |
| Houzz (GardenWeb)<br><br>11/27/2015<br><br>http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[40] | Whoever invented Aquaift to clean ovens obviously never cleaned an oven ever!!  Today, a day after Thanksgiving I spent all morning "cleaning" my oven only to have it look as bad as it did before I started.  **T*he AquaLift did nothing for the sides and the stains on the bottom after two cleaning cycles!!!***  Whatever can be done other than getting a new oven? |
| Houzz (GardenWeb)<br><br>12/16/2015<br><br>http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[41] | This is so frustrating.  I too do not read the reviews before purchasing.  I saw that it was self-cleaning that was all I thought I needed to know.  How can this be considered new technology and how can the company get away with advertising self-cleaning oven when it absolutely does not clean one bit?!  Very frustrated! |
| Houzz (GardenWeb)<br><br>12/30/2015<br><br>http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[42] | We had the Whirlpool recommended technician from Appliance Mechanics (425-212-9076) out on 12/29 and he verified that the Aqua-Lift is working as designed (meaning what??).  However that doesn't solve the problem with the promises that were made regarding how well this technology is supposed to work.  ***It can't be cleaned with conventional cleaners and the bottom is stained from food that never came up after the cleaning and scrubbing per Whirlpool's instructions***.  I have sent 4 emails to Whirlpool customer service and never heard back.  What we are requesting is that since that Whirlpool is promoting this as the next best thing and not performing up to our (and anyone on the internet who has this technology) expectations, we are requesting that Whirlpool replace the oven with one comparably priced that has conventional cleaning capabilities<br><br>Follow-up: I finally got in touch with Whirlpool after 4 emails and posting on Facebook.  It seems that they respond |

---

[39]   Attached hereto as Exhibit 30.

[40]   Attached hereto as Exhibit 31.

[41]   Attached hereto as Exhibit 32.

[42]   Attached hereto as Exhibit 33.

| Source | Comments |
|---|---|
| | when you post on social media.  I was requesting a replacement oven with conventional self cleaning and and after much back-and-forth I was informed that because the technician reported that the oven was functioning correctly that they could not give me a replacement.  Their reason being that a continually dirty oven had nothing to do with function but was a cosmetic issue.  The CS rep was "kind" enough to offer me a bottle of the Affresh cleaner.  Don't fall for the AquaLift hype. |
| Houzz (GardenWeb) 1/31/2016 http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[43] | Yes.  **This oven aqua clean is a joke!**  I wish I could have my old oven than got VERY hot and stinky back.  Would rather clean up a little ash than scrub my fingers off! |
| Houzz (GardenWeb) 2/20/2016 http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[44] | I just tried the Aqualift feature and am on the thrid cycle now.  So far only the bottom part has gotten clean and the sides are still greasy.  Hate this feature.  **Had I known how horrible it was I would have never bought it.  I am also not happy with the glass top as that too is difficult to keep clean.**This is the first time I have used the Aqualift feature and it was right after grease was spilled from a meatloaf pan.  If anyone is looking to buy a stove with this feature don't. |
| Houzz (GardenWeb) 3/18/2016 http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[45] | The aqualift does not clean at all!  I finally go disgusted and used oven cleaner and it took the finish off the sides of oven, so now my oven is ruined.  Looks dirty all the time, so dissatisfied.  As I used the oven cleaner I know I will have no prayer with Whirlpool.  I bought this stove without reading reviews.  My mistake, never again!  **With all these complaints and a product that obviously does not do it's job, there has to be a class action maybe?** |

---

[43]   Attached hereto as Exhibit 34.

[44]   Attached hereto as Exhibit 35.

[45]   Attached hereto as Exhibit 36.

| Source | Comments |
|---|---|
| Houzz (GardenWeb) 4/30/2016 http://ths.gardenweb.com/discussions/2293510/aqualift-technology-on-maytag-ranges-oven-cleaning)[46] | Welcome to the crappy Aqualift club!  I finally put some foil on the bottom rack to help catch any drips.  This was suggested from the dealer who agrees it's worthless!!  Evidently our govt regulations at work!!  I also bought some Easy off with a blue top as it was suggested it works well.  I haven't used it yet but I will when needed!!  Good luck. |

**Plaintiffs' Experiences with Whirlpool's Deceptively
Advertised AquaLift Feature**

**Tom and Katherine Danielkiewicz**

106.   On or around June 8, 2016, Mr. and Mrs. Danielkiewicz purchased a Whirlpool Electric Stove equipped with AquaLift from a Lowe's store in Petoskey, Michigan.

107.   Mr. and Mrs. Danielkiewicz purchased the Oven after viewing a sticker on the Oven marketing the AquaLift feature as a self-clean feature and after a Lowe's sales representative informed them that the AquaLift self-cleaning feature could self-clean as advertised directly on the Oven.

108.   Mr. and Mrs. Danielkiewicz first ran an AquaLift cycle approximately one week after purchase of the Oven.  They closely followed the user instructions.  Mr. and Mrs. Danielkiewicz observed, however, that AquaLift did not remove the grease or stains in the Oven.  After the first attempt, following the clean method in

---

[46]   Attached hereto as Exhibit 37.

the manual, Mr. and Mrs. Danielkiewicz struggled to clean the oven cavity two more times without success.

109.   After learning that the AquaLift feature did not self-clean, Mr. and Mrs. Danielkiewicz were forced to manually clean their Oven.

110.   In or around August 2017, Mr. Danielkiewicz called the Lowe's manager where the range was purchased to inquire getting a refund or exchange for another model.   Mr. Danielkiewicz read an article that a Sears store helped an AquaLift customer and exchanged (or refunded) his/her range.   However, the Lowe's manager refused a refund or exchange, but referred Mr. Danielkiewicz to Whirlpool Customer Service.

111.   In or around August 2017, Mr. Danielkiewicz contacted Whirlpool and spoke with a service representative.   Mr. Danielkiewicz voiced his displeasure with the non-functioning AquaLift feature and asked for a refund.   However, the Whirlpool service representative instead set up a service call with a local appliance repair.

112.   In or around August 2017, a local appliance repairman phoned and spoke with Mrs. Danielkiewicz.   The repairman asked Mrs. Danielkiewicz to talk him through the issue they were experiencing.   Mrs. Danielkiewicz described the step-by-step method that was followed to clean the oven using the AquaLift feature. The appliance repairman told Mrs. Danielkiewicz that it would be a waste of his time

to come out to the house because he is aware of the issue with the AquaLift feature and that it does not work.

113.   Approximately one week after their initial call to Whirlpool, Mr. and Mrs. Danielkiewicz contacted Whirlpool again and spoke with another Whirlpool customer service representative.   During this second call, the Whirlpool representative offered them a $75.00 gift card towards the purchase of another Whirlpool appliance.  Mr. and Mrs. Danielkiewicz rejected this offer.

**Don Martin**

114.   In or around March 2, 2017, Mr. Martin purchased a Kitchen Aid Gas Stove equipped with AquaLift from Pioneer Appliance, a local appliance store in Escanaba, Michigan.

115.   Mr. Martin purchased the Oven after viewing the in-store advertising for AquaLift demonstrating how "easy" it is to self-clean with AquaLift.

116.   In or around June 2017, Mr. Martin activated the AquaLift feature for the first time.  He followed the user instructions.

117.   Mr. Martin recalls trying the AquaLift feature three or four times.  It did not clean the Oven.

118.   Mr. Martin was forced to manually clean the Oven.

119.   Shortly after finding that the AquaLift feature did not self-clean, Mr. Martin contacted Whirlpool and spoke with a customer service representative who,

Mr. Martin recalls, told Mr. Martin that he was expecting too much from AquaLift because the feature was incapable of performing (*self-cleaning*) like a traditional self-cleaning oven.

**Georgia Stamates**

120.   In or around February 2016, Ms. Stamates purchased a Maytag Gas Stove equipped with AquaLift from Carmona's Appliance Center in Redding, California.

121.   Ms. Stamates purchased the Oven based on in-store advertising for AquaLift stating that it was a "self-clean" feature, as well as statements by a sales representative at the retail store saying that the AquaLift "self-cleaning" self-cleans as well as a traditional oven without the use high heat to clean.

122.   When Ms. Stamates first attempted to use the AquaLift feature, she closely followed the user instructions.  Ms. Stamates observed that the running of the AquaLift feature did not remove stains or cooking grease from the inside of the Oven.  Ms. Stamates recalls re-running the AquaLift cycle, but that the Oven remained in virtually the same unclean condition it was before the "self-clean" cycle was run.

123.   Ms. Stamates then contacted Maytag customer service to complain about AquaLift's inability to self-clean.  In response to her complaint, she was sent

a cleaning kit to use to manually clean the Oven.  Ms. Stamates later contacted Whirlpool customer service.  In response, Whirlpool sent her another cleaning kit.

**Arlene Powers**

124.  On or around January 25, 2015, Ms. Powers purchased a KitchenAid Duel Fuel Range equipped with AquaLift, from a Sears store in Capitola, California. At the same time, Ms. Powers purchased an extended three year warranty from Sears.

125.  Ms. Powers purchased the oven, in part, because AquaLift was advertised as a self-clean feature but without the use or need for chemicals.  After the Oven was installed, Ms. Powers ran the AquaLift feature more than once and observed that feature had virtually no effect in cleaning the Oven.

126.  As a result, Ms. Powers takes steps to avoid getting the Oven dirty, including cooking less often.  When the Oven gets dirty, Ms. Powers is forced to manually clean the interior of the Oven.

127.  On or about October 4, 2016, during a service call at her home, a Sears technician told Ms. Powers that her Oven's self-cleaning feature was functioning properly and she was performing the "self-clean" cycle properly.

128.  Ms. Powers then called Sears to complain that the self-cleaning feature of her Oven did not work.  Sears informed Ms. Powers that it was unwilling to replace the Oven.

- 43 -

129.   Pursuant to her extended warranty, a technician from AGO Home Appliance Repair Inc. arrived at Ms. Powers' home on or about January 5, 2017 to inspect or service the Oven.  The technician told Ms. Powers that the Oven's "self-clean" feature was working properly.

130.   In or about January 2017, Ms. Powers called KitchenAid customer service to complain that the self-cleaning feature of her Oven did not work.   In response, Ms. Powers was sent a cleaning kit to use to manually clean the Oven.

**Nancy Leonti**

131.   On or around March 2015, Ms. Leonti purchased a Maytag Electric Range, equipped with the AquaLift feature from a Sears store in Sacramento, California.

132.   Ms. Leonti ran the AquaLift cycle, closely following the instructions. The AquaLift self-clean feature did not clean Ms. Leonti's Oven.  As a result, Ms. Leonti has been forced to spend substantial time manually cleaning her Oven.  Ms. Leonti has tried various sponges and mild cleaners to clean the Oven without any success.

**Linda Watts**

133.   In or around November 2017, Ms. Watts and her spouse purchased a Whirlpool Electric Range equipped with the AquaLift feature from a Lowe's store in Joplin, Missouri.

134.  Ms. Watts was in the market for an oven containing a self-cleaning feature and purchased the Oven after viewing the in-store advertising for AquaLift self-clean.

135.  Ms. Watts first ran the AquaLift feature approximately four months after purchase.  She activated the AquaLift feature and closely followed the user instructions.  At the end of the "self-cleaning" cycle, Ms. Watts' Oven remained soiled with stains and food, requiring her to manually scrub the Oven.  Ms. Watts activated the AquaLift feature multiple times.  Each time, the AquaLift failed to "self-clean" as advertised and, each time, the Oven had to be manually scrubbed to remove stains from the interior.

136.  In or about spring 2018, Ms. Watts emailed Whirlpool to complain about AquaLift's inability to "self-clean."   Whirlpool has not responded to that inquiry.

**Claudia Goodman**

137.  On or around December 2016, Ms. Goodman purchased a Whirlpool Electric Stove, equipped with AquaLift from a Lowe's store in Florida.

138.  Ms. Goodman was in the market for a "self-clean oven" to replace her existing oven, which contained a traditional self-cleaning feature, and purchased an Oven containing the AquaLift feature because it was "self-cleaning."

139.   Within approximately three months of purchase, Ms. Goodman activated the AquaLift feature and closely followed the user instructions.  At the end of the "self-cleaning" cycle, Ms. Goodman's observed that the AquaLift feature did not clean the interior of her Oven.  She was forced to manually (*e.g.*, get down on hands and knees) scrub the interior of the Oven cavity.  Shortly after, Ms. Goodman ran another cycle of the AquaLift feature.  Again, AquaLift failed to clean the Oven interior.

**John Curcio**

140.   In or around April 2013, Mr. Curcio purchased a Maytag Free Standing Gas Range equipped with AquaLift from a Home Depot store in Nanuet, New York.

141.   Within approximately three months of purchase, Mr. Curcio ran a AquaLift self-cleaning cycle, closely following the user instructions.  At the end of the "self-cleaning" cycle, he observed that AquaLift had virtually no self-cleaning effect as stains and grime remained in the Oven interior.

142.   Mr. Curcio ran the AquaLift cycle several times, each time closely following the user instructions.  AquaLift failed to remove the grime from the interior of Mr. Curcio's Oven.  It did not self-clean.  As a result, Mr. Curcio was forced to manually clean the Oven.

143.   In or around July 2013, Mr. Curcio complained to Whirlpool about the inefficacy of the AquaLift feature to self-clean.  In response, Whirlpool sent him a sponge and cleaning kit to manually clean the Oven.

144.   Mr. Curcio tried using AquaLift with the cleaning kit he received from Whirlpool.  It did not effectively clean the Oven.

145.   Shortly after, Mr. Curcio called, again, to complain to Whirlpool.  The Whirlpool representative told Mr. Curcio that there was nothing more the company could do.

**Whirlpool's Acknowledgement AquaLift Does Not Work As Advertised**

146.   From June 2018 to the present, the *Wisconsin State Journal* has reported that Whirlpool, in direct response to complaints about AquaLift's inability to "self-clean" as advertised, is initiating "buy backs" (*i.e*,, refunds of AquaLift ovens).

147.   The *Wisconsin State Journal* has published several articles about Whirlpool's "buyback" initiative. [47]   First on June 4, 2018 the *Wisconsin State Journal* reported that Whirlpool ovens with a low heat "self-cleaning" feature called "AquaLift" does not, and cannot, work as advertised.   The article specifically featured the experience of consumers who complained to Whirlpool about the ovens'

_____

[47] Whirlpool has publicly confirmed the existence of this program to the *Wisconsin State Journal* through its media representative, Cean Burgeson.  See Exhibit 39.

inability to self-clean.  One consumer Barbara Behnke, for example, performed "five consecutive cleanings" with the AquaLift cycle and found it did not (at all) remove baked on grime from the oven.  What's more, Ms. Behnke told the *Washington State Journal* she "had numerous phone calls and emails to Maytag" and "multiple visits from Maytag service techs" to try, in vain, to get AquaLift to work. See Exhibit 38.

148.  On behalf of Ms. Behnke, the *Wisconsin State Journal* wrote to Whirlpool and attached  fifteen photos it had received from Ms. Behnke of her oven, showing AquaLift's inability to clean.  ***In response, Whirlpool refunded her the full cost of her AquaLift oven ($894.64)***.

149.  This was not an isolated transaction.  In other articles from July to September, the *Wisconsin State Journal* reported that over ***20 consumers*** had received refunds or exchanges or would receive them as part of the "buy back" initiative.  See Exhibit 39**.**  Jan Rohde, of Madison Wisconsin, for example, complained that she had spoken to multiple Whirlpool customer care representatives about AquaLift's inability to "self-clean" and "was told the stains are cosmetic and that Whirlpool would send a me a free cleaning kit!  ***This is not acceptable***!"  In response to her complaint, Whirlpool ***refunded the full cost of her oven ($1,410)***.

150.  Whirlpool continues to offer consumers refunds and exchanges in response to complaints about AquaLift's "self-cleaning."  Therefore, not only is Whirlpool aware of the scores of complaints about AquaLift, it has acknowledged,

through these refunds, that AquaLift's advertising has deceived, or can deceive consumers who believed they were purchasing a "self-cleaning" oven when the oven is incapable of doing so.

## NOTICE AND DEMAND PROVIDED TO WHIRLPOOL

151.   On October 19, 2018, Plaintiffs' counsel wrote to Whirlpool to provide notice of Whirlpool's violation of the statutory and common laws of Michigan, Florida, Missouri, New York, and California on behalf of Plaintiffs, the Class, and Plaintiffs' respective state subclasses, as well as to demand, *inter alia*, a cessation of Whirlpool's false and misleading advertising, compensatory damages, restitution, and disgorgement.  A true and correct copy of the demand letter is attached hereto as Exhibit 40.  Whirlpool failed to cure its violations of the statutory and common laws of Michigan, Florida, California, Missouri, and New York within thirty days of Plaintiffs' counsel's demand letter.

## CLASS ACTION ALLEGATIONS

152.   Plaintiffs bring this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the following proposed Class:  ***All persons who purchased a Whirlpool, Maytag, KitchenAid, or Jenn-Air oven equipped with AquaLift in Michigan, Florida, California, New York, and Missouri.***

153.   Plaintiffs also seek certification of the following subclasses:

- 49 -

<u>Michigan Subclass</u>: All persons who purchased a Whirlpool, Maytag, KitchenAid, or Jenn-Air oven equipped with AquaLift in the state of Michigan.

<u>Florida Subclass</u>: All persons who purchased a Whirlpool, Maytag, KitchenAid, or Jenn-Air oven equipped with AquaLift in the state of Florida.

<u>California Subclass</u>: All persons who purchased a Whirlpool, Maytag, KitchenAid, or Jenn-Air oven equipped with AquaLift in the state of California.

<u>New York Subclass</u>: All persons who purchased a Whirlpool, Maytag, KitchenAid, or Jenn-Air oven equipped with AquaLift in the state of New York.

<u>Missouri Subclass</u>: All persons who purchased a Whirlpool, Maytag, KitchenAid, or Jenn-Air oven equipped with AquaLift in the state of Missouri.[48]

154. Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and Subclasses may be expanded or narrowed by amendment or amended complaint.

155. Specifically excluded from the Class are Whirlpool, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers or entities controlled by Whirlpool, and their heirs, successors, assigns, or other persons or entities related to

---

[48] The Michigan, Florida, California, New York and Missouri subclasses are collectively referred to as the "Subclasses." Unless otherwise noted, the Class and Subclasses are referred to herein as the "Class."

or affiliated with Whirlpool and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

156. ***Numerosity***. The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class includes thousands of members who are geographically dispersed across the country and the states of Michigan, Florida, New York, California and Missouri. The precise number of Class members are unknown to Plaintiffs. The true number of Class members is known by Whirlpool, however, and thus can be ascertained through appropriate investigation and discovery and may be notified of the pendency of this action by first class mail, electronic mail, or published notice.

157. ***Existence and predominance of common questions of law and fact***. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) Did Whirlpool represent the Ovens to be "self-cleaning;"

(b) Whether Whirlpool's advertising campaign for AquaLift was false, deceptive, or misleading to a reasonable consumer;

(c) Whether Whirlpool knew or should have known that its AquaLift technology could not perform as advertised;

- 51 -

(d)      Whether Whirlpool had a duty to disclose AquaLift is incapable of self-cleaning;

(e)      Whether the purported ability of AquaLift to "self-clean" tough baked-on soils from the interior of an oven in under one hour is a material fact to consumers;

(f)      Whether Whirlpool breached an express warranty made to Plaintiffs and the Class members;

(g)      Whether Whirlpool breached an implied warranty of merchantability;

(h)      Whether Whirlpool breached a contract with Plaintiffs and the Class members;

(i)      Whether Whirlpool represented that the Ovens with AquaLift have characteristics, uses, and benefits, that they do not have;

(j)      Whether Whirlpool advertised the Ovens with AquaLift with the intent not to sell them as advertised;

(k)      Whether Whirlpool failed to reveal a material fact regarding its AquaLift technology, the omission of which would tend to mislead or deceive consumers, and which fact could not reasonably be known by consumers;

(l)      Whether Whirlpool made a representation of fact or statement of fact material to its sale of Ovens equipped with AquaLift such that a person could

reasonably believe the represented or suggested state of affairs to be other than it actually is;

(m)   Whether Whirlpool failed to reveal facts that were material to its sale of Ovens equipped with AquaLift in light of representations of fact made in a positive manner;

(n)   Whether Whirlpool violated the MCPA;

(o)   Whether Whirlpool violated the FDUTPA;

(p)   Whether Whirlpool violated the UCL;

(q)   Whether Whirlpool violated the CLRA;

(r)   Whether Whirlpool violated the GBL;

(s)   Whether Whirlpool violated the MMPA;

(t)   Whether Whirlpool was unjustly enriched;

(u)   Whether Whirlpool acted willfully and in wanton disregard of the consequences of its actions to consumers;

(v)   Whether Plaintiffs and the Class members are entitled to damages and the amount of such damages;

(w)   Whether Plaintiffs and the Class members are entitled to an award of punitive damages; and

(x)   Whether Plaintiffs and the Class members are entitled to equitable relief, including an injunction enjoining Whirlpool from engaging in the

wrongful and unlawful conduct alleged herein and ordering Whirlpool to engage in a corrective advertising campaign.

158. **Typicality**. Plaintiffs' claims are typical of the claims of the other Class members in that Plaintiffs and the Class members were injured by the same wrongful conduct and scheme of Whirlpool alleged herein.

159. **Adequacy of representation**. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action. Further, Plaintiffs have no interests that are antagonistic to those of the other Class members.

160. **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be involved in individual litigation of their claims against Whirlpool. It would, thus, be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to

all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single United States District Court, and presents no unusual management difficulties under the circumstances presented in this case.

161.    In the alternative, the Class may also be certified because:

(a)    the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for Whirlpool;

(b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)    Whirlpool has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and injunctive relief with respect to the members of the Class as a whole.

162.    Alternatively, certain issues relating to Whirlpool's liability may be certified pursuant to Fed. R. Civ. P. 23(c)(4).

- 55 -

## CAUSES OF ACTION

## COUNT I

### Violations of the Magnuson-Moss Warranty Act (Implied Warranty)
### (On Behalf of the Class and Subclasses)

163.   Plaintiffs reallege and incorporate by reference each allegation above as though fully set forth herein.

164.   Under the MMWA, an "implied warranty" is one that "arise[s] under State law . . . in connection with the sale by a supplier of a consumer product."  15 U.S.C. §2301.

165.   Plaintiffs and the Class members are "consumers," Whirlpool is a "supplier" and "warrantor," and Ovens with AquaLift are "consumer products" as defined by the MMWA.  15 U.S.C. §2301.

166.   Under state law, a warranty that goods shall be merchantable is implied in every contract for the sale of goods by a merchant that deals in such goods.

167.   Whirlpool is a merchant with respect to kitchen ovens.  As such, a warranty that its Ovens equipped with AquaLift were merchantable was implied in the contract of each sale, including to Plaintiffs and the Class members.

168.   In order to be merchantable, the Ovens with AquaLift, at a minimum, were required to: (a) pass without objection in the trade under the contract description; (b) be fit for the ordinary purposes for which such goods are used; and (c) conform to the promises or affirmations of fact made on the container.

- 56 -

169.   Whirlpool breached the implied warranty on its Ovens with AquaLift because, contrary to Whirlpool's representations, promises, and affirmations of fact, including on each product's label, AquaLift could not "self-clean" the interior of the Ovens.

170.   Indeed, the AquaLift feature on the Ovens was incapable of self-cleaning when such Ovens left the possession of Whirlpool and, as such, could not perform according to Whirlpool's affirmative representations that the system would "self-clean" heavy baked-on soils from the interior of an oven in under one hour. Therefore, the Ovens with AquaLift were not reasonably fit for their intended, anticipated, or reasonably foreseeable use.

171.   Accordingly, the Ovens would not: (a) pass without objection in the trade under the contract description; (b) are not fit for the ordinary purposes for which such goods are used; and (c) do not conform to the promises or affirmations of fact made on the container.

172.   As a direct and proximate result of Whirlpool's breach of the implied warranty of merchantability, Plaintiffs and the Class members have been damaged.

## COUNT II

### Breach of Contract
### (On Behalf of the Class and the Subclasses)

173.   Plaintiffs reallege and incorporate by reference each allegation above as though fully set forth herein.

- 57 -

174.   Whirlpool offered to sell the Ovens with AquaLift technology that would "self-clean" heavy baked-on soils from the interior of an Oven in under one hour.

175.   Plaintiffs and the Class members accepted Whirlpool's offer by tendering the asking price for each Oven, thereby creating a valid and enforceable contract, supported by valuable consideration, for the sale of a Whirlpool Oven with AquaLift technology that would "self-clean" heavy baked-on soils from the interior of the Oven in under one hour.

176.   Whirlpool breached this contract with Plaintiffs and the Class members by delivering a Whirlpool oven equipped with AquaLift that, contrary to the terms of the contract between Whirlpool on the one hand and Plaintiffs and the Class members on the other, was incapable of "self-cleaning."

177.   As a result of Whirlpool's breach of contract, Plaintiffs and the Class members suffered damages.

## COUNT III

### Breach of Express Warranty
### (On Behalf of the Class and Subclasses)

178.   Plaintiffs reallege and incorporate by reference each allegation above as though fully set forth herein.

179.   Whirlpool designed, manufactured, advertised, distributed, and sold the Ovens equipped with AquaLift.

180.   In connection with each sale of a Whirlpool kitchen oven equipped with AquaLift, Whirlpool made certain affirmations of fact and promises relating to its Ovens specifically, that the AquaLift technology would "self-clean" heavy baked-on soils from the interior of the Oven in less than one hour.

181.   Whirlpool's affirmations of fact and promises relating to its Ovens became part of the basis of the bargain and created an express warranty that Whirlpool Ovens equipped with AquaLift would conform to Whirlpool's affirmations and promises.

182.   Whirlpool's express warranty regarding the benefits of AquaLift extends directly to consumers like Plaintiffs and the Class members, who are intended third-party beneficiaries of any contract between Whirlpool and the retailers where Ovens with AquaLift were sold.

183.   Whirlpool breached its express warranty by delivering Ovens with AquaLift that, contrary to the terms of the express warranty, could not "self-clean."

184.   Whirlpool's breach of its express warranty directly and proximately caused damages to Plaintiffs and the Class members.

185.   All conditions precedent to this claim, including notice, have been satisfied.

## COUNT IV

### Breach of Implied Warranty of Merchantability
### (On Behalf of the Class and the Subclasses)

186.   Plaintiffs reallege and incorporate by reference each allegation above as though fully set forth herein.

187.   Whirlpool is a merchant with respect to kitchen ovens.  As such, a warranty that its Ovens with AquaLift were merchantable and was implied in the contract of each sale, including to Plaintiffs and the Class members.

188.   In order to be merchantable, Ovens with AquaLift, at a minimum, were required to: (a) pass without objection in the trade under the contract description; (b) be fit for the ordinary purposes for which such goods are used; and (c) conform to the promises or affirmations of fact made on the container.

189.   Whirlpool breached the implied warranty on its Ovens with AquaLift because, contrary to Whirlpool's representations, promises, and affirmations of fact, including on each product's label, AquaLift could not "self-clean" heavy baked-on soils from the interior of the Ovens.

190.   Indeed, the AquaLift technology in the Ovens could not "self-clean" when such Ovens left the possession of Whirlpool and, as such, could not perform according to Whirlpool's affirmative representations that the system would "self-clean" heavy baked-on soils from the interior of an oven in under one hour.

Therefore, the Ovens with AquaLift were not reasonably fit for their intended, anticipated, or reasonably foreseeable use.

191.   Accordingly, the Ovens with AquaLift would not: (a) pass without objection in the trade under the contract description; (b) are not fit for the ordinary purposes for which such goods are used; and (c) do not conform to the promises or affirmations of fact made on the container.

192.   Whirlpool's breach of its implied warranty directly and proximately caused damages to Plaintiffs and the Class members.

193.   Whirlpool's implied warranty regarding the benefits of AquaLift extends directly to consumers like Plaintiffs and the Class members, who are intended third-party beneficiaries of any contract between Whirlpool and the retailers where The Ovens with AquaLift are sold.

## COUNT V

### Unjust Enrichment
### (On Behalf of the Class and Subclasses)

194.   Plaintiffs reallege and incorporate by reference each of the allegations above as though fully set forth herein.

195.   This claim is pled in the alternative.

196.   In reliance on Whirlpool's false and misleading advertising campaign for the AquaLift technology, Plaintiffs and the Class members conferred a monetary benefit on Whirlpool.

- 61 -

197.   As such, Whirlpool has been unjustly enriched at the expense of Plaintiffs and the Class members.

198.   Specifically, through its false and misleading advertising campaign, as alleged more fully herein, Whirlpool has unlawfully received money and other benefits at the expense of Plaintiffs and the Class members.

199.   Whirlpool's receipt and retention of this financial benefit is unfair and improper under the circumstances.

200.   Therefore, Whirlpool should be ordered to disgorge its ill-gotten gains.

201.   Plaintiffs and the Class members have no adequate remedy at law.

## COUNT VI

### Violation of the MCPA
### (On Behalf of the Michigan Subclass)

202.   Plaintiffs Martin and the Danielkiewicz's reallege and incorporate the allegations above as though fully set forth herein.

203.   Plaintiffs Martin, the Danielkiewicz's and the Michigan Subclass are "persons" and Whirlpool's conduct complained of herein constitutes "trade or commerce" as defined by the MCPA.  M.C.L.A. §445.902.

204.   The MCPA provides that "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful[.]"

205. Whirlpool's false and misleading advertising campaign, as described more fully herein, is an unfair, unconscionable, and/or deceptive method, act, or practice in the conduct of trade, which violates the MCPA in the following ways:

(a)     Representing that the Ovens with AquaLift have characteristics, uses, and benefits, that they do not have.  M.C.L.A. §445.903(1)(c);

(b)     Advertising the Ovens with AquaLift with the intent not to sell them as advertised.  M.C.L.A. §445.903(1)(g);

(c)     Failing to reveal a material fact – that AquaLift does not function as advertised – the omission of which tends to mislead or deceive consumers, and which fact could not reasonably be known by consumers.  M.C.L.A. §445.903(1)(s);

(d)     Making a representation of fact or statement of fact material to the transaction – *i.e.*, that AquaLift has the capability to "self-clean" the inside of a Whirlpool oven in less than one hour – such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.  M.C.L.A. §445.903(1)(bb); and

(e)     Failing to reveal facts that are material to the transaction – *i.e.* that AquaLift does not perform as advertised – in light of representations of fact made in a positive manner.  M.C.L.A. §445.903(1)(cc).

206. Plaintiffs Martin, the Danielkiewicz's and the Michigan Subclass have been substantially injured by Whirlpool's unfair and deceptive practices in that they

were exposed to and relied on Whirlpool's misrepresentations of material fact regarding the AquaLift feature, including that AquaLift would "self-clean" heavy baked-on soils from the inside of an oven in less than one hour.  Based on their reasonable reliance on Whirlpool's misrepresentation, Plaintiffs Mr. Martin, the Danielkiewicz's and the Michigan Subclass members purchased the Ovens that did not possess the capabilities that Whirlpool represented.

207.   The damages suffered by Plaintiffs Martin the Danielkiewicz's and the Michigan Subclass were directly and proximately caused by the deceptive, misleading, and unfair practices of Whirlpool, as more fully described herein. Indeed, Plaintiffs Martin, the Danielkiewicz's and the Michigan Subclass members would not have purchased the Ovens with AquaLift, or would not have paid as much as they did, but for Whirlpool's false and misleading advertising.

208.  Pursuant to M.C.L.A. §445.911(1) & (3), Plaintiffs Martin, the. Danielkiewicz's and the Michigan Subclass members seek damages and a declaratory judgment and Court Order enjoining the above-described wrongful acts and practices of Whirlpool and for restitution and disgorgement.

209.   Additionally, pursuant to M.C.L.A. §445.911(5), Plaintiffs Martin, the Danielkiewicz's and the Michigan Subclass request that Whirlpool be ordered to bear the costs of Class notice.

## COUNT VII

### Violation of the FDUTPA
### (On Behalf of the Florida Subclass)

210.   Plaintiff Goodman realleges and incorporates the allegations above as though fully set forth herein.

211.   The stated purpose of the FDUTPA is to "protect the consuming public from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. §501.202(2).

212.   Plaintiff Goodman is a "consumer," the Ovens with AquaLift are "goods," and Whirlpool is engaged in "trade or commerce" within the meaning of the statute.  Fla. Stat. §501.203.

213.   Fla. Stat. §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts of practices in the conduct of any trade or commerce."  Fla. Stat. §501.204(2) provides that in construing the foregoing subsection, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission Act."

214.   Whirlpool's advertising campaign for the AquaLift feature in its Ovens is an unfair and deceptive practice that is likely to mislead – and has misled – consumers acting reasonably under the circumstances and, thus, Whirlpool's

- 65 -

advertising campaign offends public policies and is immoral, unethical, unscrupulous, and substantially injurious to consumers.

215.   Plaintiff Goodman and the Florida Subclass members have been substantially injured by Whirlpool's unfair and deceptive practices in that they were exposed to and relied on Whirlpool's misrepresentations of material fact regarding the AquaLift feature, including that AquaLift "self-cleans" heavy baked-on soils from the inside of an oven in less than one hour.  Based on their reasonable reliance on Whirlpool's misrepresentation, plaintiff Goodman and the Florida Subclass members purchased the Ovens that did not possess the capabilities that Whirlpool represented.

216.   The damages suffered by Plaintiff Goodman and the Florida Subclass were directly and proximately caused by the deceptive, misleading, and unfair practices of Whirlpool, as more fully described herein.  Indeed, plaintiff Ms. Goodman and the Florida Subclass members would not have purchased the Ovens with AquaLift, or would not have paid as much as they did, but for Whirlpool's false and misleading advertising.

217.   Pursuant to Fla. Stat. §501.211(1), Plaintiff Goodman and the Florida Subclass members seek a declaratory judgment and Court Order enjoining the above-described wrongful acts and practices of Whirlpool and for restitution and disgorgement.

218.   Additionally, pursuant to Fla. Stat. §§501.211(2) and 501.2105, Plaintiff Goodman and the Florida Subclass assert claims for damages, attorney fees, and costs.

## COUNT VIII

### Violation of the GBL §349
### (On Behalf of the New York Subclass)

219.   Plaintiff Curcio realleges and incorporates by reference the allegations above as though fully set forth herein.

220.   GBL §349 makes unlawful any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York.

221.   Whirlpool has engaged in deceptive acts and practices through its misrepresentations and omissions of material facts in its advertising campaign directed at Plaintiff Curcio and the New York Subclass as more fully described above, in connection with the sale of Ovens that are sold with "AquaLift," a "self-cleaning" product feature, that is incapable of self-cleaning. Plaintiff Curcio and the New York Subclass on reasonably believed and expected at the time of purchase that Whirlpool's advertising was a true representation of the Oven's "self-clean" functionality when it was not. These false representations and affirmations by Whirlpool and its representatives regarding AquaLift's self-cleaning capabilities are

material facts that reasonable consumers would and did rely upon in their decision as to purchase Ovens with the AquaLift "self-clean" technology.

222. Through its advertising campaign for AquaLift, Whirlpool made numerous misrepresentations and omitted material facts upon which Plaintiff Curcio and the New York Subclass relied upon to their detriment.

223. Whirlpool has used and employed unconscionable commercial practices, deception, fraud, misrepresentations, and/or the knowing concealment, suppression, and/or omission of material facts with the intent that others rely thereon (or, in the case of an omission, with the belief that the parties were ignorant of the true facts), in connection with the marketing, distributing, sale, and advertisement of the Ovens.

224. Whirlpool's  misrepresentations and omissions are likely to mislead and did materially mislead Plaintiff Curcio, the New York Subclass, and other reasonable consumers by causing them to purchase the Ovens at a price they would not have otherwise paid and to incur additional damages and expenses that they would not have incurred but for Defendant's deceptive acts and practices.

225. Defendant made numerous misrepresentations and omitted material facts upon which Plaintiff Curcio and the New York Subclass relied upon to their detriment.

226. The unfair and deceptive trade practices have directly, foreseeably, and proximately caused damages and injury to plaintiff Curcio and the New York Subclass described above.

227. By virtue of the foregoing, Defendant has violated GBL §349.

## COUNT IX

### Violation of the GBL §350
### (On Behalf of the New York Subclass)

228. Plaintiff Curcio realleges and incorporates by reference the allegations above as though fully set forth herein.

229. NYGBL §350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

230. Defendant's advertising of the Ovens, as alleged in more detail herein, is and was false within the meaning of GBL §350-a(1).

231. Plaintiff Curcio and the New York Subclass were materially misled by Defendant's advertising.

232. As a direct and proximate result of Defendant's false advertising, Plaintiff Curcio and the New York Subclass lost money in that they would not have purchased the Ovens or would have paid less for them.

## COUNT X

### Violation of the CLRA
### (On Behalf of the California Subclass)

233.   Plaintiffs Leonti, Powers, and Stamates reallege and incorporate by reference the allegations above as though fully set forth herein.

234.   Whirlpool's actions, representations and conduct have violated and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

235.   Plaintiffs Leonti, Powers, and Stamates and the California Subclass are "consumers" as that term is defined by the CLRA §1761(d).   And, the Ovens Plaintiffs Leonti, Powers, Stamates and the California Subclass purchased were goods within the meaning of CLRA §1761(a).

236.   Whirlpool's misrepresentations of the Ovens "self-cleaning" ability led consumers to falsely believe the Ovens could "self-clean" as advertised.  These false representations violate the following sections of the CLRA:

(a)   CLRA §1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." Whirlpool violated this

provision by misrepresenting Ovens sold with AquaLift could "self-clean" when they could not.

(b)     CLRA §1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Whirlpool violated this provision by misrepresenting Ovens sold with AquaLift could "self-clean" when they could not; and

(c)     CLRA §1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."  Whirlpool violated this provision by misrepresenting Ovens sold with AquaLift could "self-clean" when they could not.

237.  Plaintiffs Leonti, Powers, and Stamates and California Subclass members suffered damages caused by Whirlpool's misrepresentations because: (a) they would not have purchased the  Ovens on the same terms if the true facts concerning their "self-cleaning" had been known; (b) they paid a price premium due to the "self-clean" representation;  (c) the Ovens sold with AquaLift did not  perform as promised because they were incapable of "self-cleaning" and (d) Plaintiffs Leonti, Powers, Stamates and the California Subclass members suffered damages from paying for Ovens that they believed could "self-clean" when they were could not.

238.  Plaintiffs Leonti, Powers, and Stamates and the California Subclass request that this Court enjoin Whirlpool from continuing to employ the unlawful

- 71 -

methods, acts, and practices alleged herein. If Defendant is not restrained from engaging in these types of practices in the future, Plaintiffs and the other members of the Class will continue to suffer harm.

239. On October 19, 2018, a CLRA notice letter was served on Defendant Whirlpool which complies in all respects with California Civil Code §1782(a). A true and correct copy of Plaintiffs' October 19, 2018 CLRA demand letter is attached hereto as Exhibit 40.

240. Whirlpool has not informed Plaintiffs' of its intention to correct, repair, replace, or otherwise rectify the goods alleged to be in violation of § 1770 within thirty (30) days of the October 19, 2018 notice letter. Therefore, Plaintiffs Leonti, Powers, and Stamates seek damages from Whirlpool pursuant to CLRA §1780.

241. Plaintiff Leonti, Powers, and Stamates also request this Court award their costs and reasonable attorneys' fees pursuant to CLRA §1780(d).

## COUNT XI

### Violation of the UCL
### (On Behalf of the California Subclass)

242. Plaintiffs Leonti, Powers, and Stamates reallege and incorporate by reference the allegations above as though fully set forth herein.

243. Whirlpool is subject to the UCL, Cal. Bus. & Prof. Code §17200, *et seq*. The UCL provides, in pertinent part: "Unfair competition shall mean and

include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising. . . ."

244. California Business & Professions Code §17200 prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

245. Defendant's business acts and practices alleged herein violated the "unfair" prong of the UCL because the injury to consumers is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury that consumers themselves could reasonably have avoided. Indeed, the consumer injury is substantial, amounting to millions of dollars during the Class Period. This substantial injury benefits only Defendant in the form of substantial increased revenues and does not benefit consumers or competition, but rather, harms consumers who were forced into purchasing unwanted life insurance. Finally, the substantial injury is not one that consumers themselves could reasonably have avoided. As alleged herein, Defendant pervasively advertised AquaLift to consumers as a "self-cleaning" feature of its Ovens when it knew it was incapable of "self-cleaning." Moreover, reasonable consumers had no reason to suspect Whirlpool's "self-cleaning" representations were false.

246.    Defendant's business acts and practices as alleged herein also violate the "unlawful" prong of the UCL because, as alleged herein, Defendant's business acts and practices included:

(a)    deceptively representing to Plaintiffs Leonti, Powers, Stamates, and the California Subclass that the Ovens could "self-clean" when they cannot;

(b)    falsely advertising the Ovens as "self-cleaning" when they are incapable of "self-cleaning" and directing that advertising at consumers, including Plaintiffs Leonti, Powers, Stamates and the California Subclass;

(c)    failing to warn or disclose to consumers, including Plaintiffs Leonti, Powers, Stamates and the California Subclass that the Ovens cannot "self-clean";

(d)    violating the CLRA as described herein;

(e)    violating the MCPA;

(f)    violating the GBL;

(g)    violating the MMPA; and

(h)    violating the FDUTPA.

247.    Whirlpool used false advertising, marketing, and misrepresentations to induce plaintiff Leonti, Powers, Stamates, and the California Subclass to purchase the Ovens and Plaintiffs Leonti, Powers, Stamates and the California Subclass relied to their detriment on Whirlpool's representations.  Had Plaintiffs Leonti, Powers and

Stamates been adequately informed and not misled by Defendant's false representations they would have acted differently by not purchasing the Ovens or paying substantially less for them.   Defendant's conduct therefore caused and continues to harm economic harm to Plaintiffs Leonti, Powers, and Stamates and the California Subclass.

248.   Plaintiffs Leonti, Powers, and Stamates reserve the right to allege other violations of law by Defendant, which constitute other unlawful, unfair, or fraudulent business acts or practices in violation of the UCL.

249.   Defendant's misrepresentations are therefore "unlawful" and "unfair" business practices under the UCL §17200 entitling Plaintiffs Leonti, Powers, Stamates and the California Subclass to judgment and equitable relief against Whirlpool, as set forth in the Prayer for Relief.   Additionally, pursuant to UCL §17203, Plaintiff sLeonti, Powers, Stamates and the California Subclass seek an order requiring Defendant to immediately cease such acts of unlawful and unfair business practices and requiring Defendant to correct its actions.

## COUNT XII

### Violation of the MMPA
### (On Behalf of the Missouri Subclass)

250.   Plaintiff Watts realleges and incorporates by reference the allegations above as though fully set forth herein.

- 75 -

251.    The Missouri Merchandising Practices Act, §407.010 *et seq.* RSMo. ("MMPA") prohibits unfair and deceptive acts and practices in connection with the sale of merchandise in Missouri.

252.    The sale, or alleged sale, of the Ovens was a "sale" of "merchandise," as defined by the MMPA.

253.    Pursuant to 15 C.S.R. §60-8.020, Unfair Practice in General, an "Unfair Practice is any practice which – (A) Either 1. offends any public policy as it has been established by the . . . statutes or common law of this state; or 2. Is unethical, oppressive or unscrupulous; and (B) presents a risk of, or causes, substantial injury to consumers."

254.    Pursuant to 15 C.S.R. §60-8.090, Illegal Conduct, "(1) it is an unfair practice for any person in connection with advertisement or sale of merchandise to engage in any method, use or practice which – (A) violates state or federal law intended to protect the public; and (B) presents a risk of, or causes, substantial injury to consumers."

255.    The sale, or alleged sale, of the Ovens occurred within the state of Missouri.

256.    Plaintiff Watts' purchase, or alleged purchase, of the Ovens was primarily for personal, family, and/or household purposes.

257.   Defendant's conduct was the act, use, and employment of deception, false pretense, false promise, misrepresentation, unfair practice, and the concealment, suppression, and omission(s) of material fact(s) as described in §407.020 RSMo., along with the regulations for the implementation of the MMPA as laid out at 15 C.S.R. §§60-7.010, *et seq.*, 60-8.010, *et seq.*, and 60-9.010, *et seq.*, and was, therefore, a violation of the MMPA.

258.   Defendant's violations of the MMPA include, but are not limited to, the following:

(a)   falsely representing to consumers, plaintiff Watts, and the Missouri Subclass that the Ovens could "self-clean" when they cannot;

(b)   falsely representing the Ovens as "self-cleaning" when they are incapable of "self-cleaning" and directing that advertising at consumers, including Plaintiff Watts and the Missouri Subclass;

(c)   failing to take appropriate and adequate steps to inform consumers, Plaintiff Watts and the Missouri Subclass of AquaLift's failure to self-clean; and

(d)   engaging in a pattern of conduct which, when taken in its totality, is and was unfair, deceptive and unconscionable.

259.   Defendant's conduct as described above constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation,

- 77 -

unfair practices and/or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of any merchandise in trade or commerce in that Defendant represents that AquaLift is a "self-cleaning" oven feature when it is not.  As such, the Ovens are advertised to be misleading.

260.   Defendant's misrepresentations and omissions as stated herein, are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff Watts and the Missouri Subclass.

261.  Plaintiff Watts and Missouri Subclass members suffered an ascertainable loss as a result of Defendant's unlawful conduct as alleged herein, including the difference between the actual value of the purchased Ovens and the value of the Ovens if they had been as represented.  Had Plaintiff Watts and Missouri Subclass members known the truth about the Ovens, they would not have purchased the Ovens, or would have purchased the Ovens on different terms.

262.   Pursuant to §407.025.1 RSMo., Plaintiff Watts and the Missouri Subclass are entitled to the recovery of actual damages, punitive damages, costs and reasonable attorneys' fees, and equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for a judgment in their favor and in favor of the Class and Subclasses as follows:

A.     Determining that this action is a proper class action, certifying Plaintiffs as Class representatives under Rule 23 of the Federal Rules of Civil Procedure and appointing Robbins Geller Rudman & Dowd LLP as Class Counsel;

B.     Awarding temporary, preliminary, and permanent declaratory, injunctive, and other equitable relief, including, but not limited to, enjoining Whirlpool from continuing its false, deceptive, and misleading advertising campaign for AquaLift;

C.     Ordering Whirlpool to engage in a corrective advertising campaign;

D.     Awarding Plaintiffs and the Class damages, including statutory and punitive damages, and interest thereon;

E.     Awarding disgorgement of Whirlpool's revenues to Plaintiffs and the other Class members;

F.     Directing Whirlpool to identify, with this Court's supervision, victims of its conduct and to pay them restitution;

G.     Awarding Plaintiffs attorneys' fees and costs; and

H.     Providing any and all further legal and equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs respectfully demand trial by jury on all issues so triable.

DATED:  November 19, 2018            Respectfully submitted,

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
**The Miller Law Firm, P.C.**
950 W. University Dr., Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com

**ROBBINS GELLER RUDMAN
& DOWD LLP**
Samuel H. Rudman
Mark S. Reich
Jordan D. Mamorsky
58 S. Service Road, Suite 200
Melville, NY 11747
Telephone:  631/367-7100
srudman@rgrdlaw.com
mreich@rgrdlaw.com
jmamorsky@rgrdlaw.com

**ROBBINS GELLER RUDMAN
& DOWD LLP**
Paul J. Geller
Stuart A. Davidson
Christopher C. Gold
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone:  561/750-3000
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com
cgold@rgrdlaw.com

*Attorneys for Plaintiffs and the Proposed
Class and Subclasses*

- 80 -